STATE vs. HARRY L. McCULLOUGH.

*Desertion of Wife—Judgment in Defendant's Absence.*

1. Construction of the statute relating to the desertion of the wife by the husband.

2. The husband during the hearing, being on bail, absconded. Bail forfeited and judgment rendered against the husband during his absence.

3. In a proceeding under act April 13, 1887 (Rev. Code, p. 971), providing for the arrest of a husband for the desertion of his wife, it is not necessary that the marriage or desertion occurred in this State; it is sufficient that the husband is in the State, and that he neglects, without cause, to support his wife.

4. Act April 13, 1887, (Rev. Code, p. 971) provides that, where a husband deserts his wife without cause he may be arrested and bound over to appear and answer at the Court of General Sessions, and, in default of bail, be committed to custody. The defendant was arrested under this statute and gave bail. He appeared at the trial, but absconded before judgment

was rendered. *Held*, that such a proceeding is not strictly criminal in its character, and that an order directing defendant to pay to his wife a certain sum, to give security for such payment, and, in case of his failure, to be committed to jail until the order is complied with or he is discharged by the Court, could properly be made in his absence, and executed upon him when apprehended.—LORE, C. J., *dissenting*.

(*April 30, 1898.*)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*R. C. White*, Attorney-General, for the State.

*John B. Penington* for the defendant.

Court of General Sessions, Kent County, April Term, 1898.

The defendant was bound over for his appearance at the April Term on the charge of desertion, preferred by his wife, Julia M. McCullough. He appeared on April 28, and was present during the taking of testimony, but absconded before the Court rendered its decision.

Further facts fully appear in the following decision of the Court:

SPRUANCE, J:—We have three statutes in reference to the duty of the husband to support his wife.

Chap. 48 of the Revised Code, Sec. 15, p. 377, provides for the enforcement of the duty at the instance of the Trustees of the Poor.

The act of April 11, 1887, Sec. 1, Rev. Code, 956, makes the wilful desertion of the husband to support his wife, or his wilful desertion of her, a misdemeanor punishable by fine.

The act under which we are now proceeding was passed April 13, 1887, and is found on page 971 of the Revised Code.

This act provides "That if any husband or father being within the limits of the State of Delaware, shall separate himself from his wife, or from his children, or from his wife and children, without reasonable cause, or shall neglect to maintain his wife or children, it shall be lawful for any Justice of the Peace of this State, upon information made before him under oath or

affirmation by his wife or children, or either of them, or by any other person, to issue his warrant to the sheriff or to any constable of the county, for the arrest of the person against whom the information shall be made as aforesaid and bind him over with one or more sufficient sureties in a penal sum to be determined and fixed by the Justice, not less, however, than the sum of five hundred dollars, to appear at the next session of the Court of General Sessions in and for the county in which such proceedings are had, there to answer the said charge of desertion, and in default of giving such surety to commit him to the jail of the county," etc.

It is not material that the marriage or desertion should have taken place in this State.

It is sufficient that the husband is in this State, and that he, without reasonable cause, neglects to maintain his wife.

The facts proved are substantially these: The defendant, Harry L. McCullough, was married to his wife Julia, the complainant, in Wheaton, Illinois., in 1880. After living together in various places they removed to Chicago in 1884, where they continued to reside until January, 1892, when an altercation arose between them in which the husband, according to his statement, charged his wife with tale bearing and falsehood. She says that she charged him with spending his money upon another woman, and that he admitted it. He had an opportunity to deny this statement of the wife when he testified before us, but he did not do so. The quarrel culminated in a declaration by one of them that they could not live together, and she started to go away, but as the night was inclement he offered to go, and did so. She stayed, continuing to live in the house a month thereafter. He continued to live in Chicago for a few months, but did not visit her or do anything for her support. Afterwards he changed his home several times, and finally came to Delaware, where he has since resided.

On several occasions, when she learned where he was, she wrote to him demanding money from him, but his testimony, as well as hers, is that from the day of their separation in 1892 he has never contributed anything towards her support.

She testifies that when she learned that he was living in this State she came here and found him living with another woman as his wife.

The defendant admits living with this person, but denies that their relations were unlawful.

Under the facts proved it is quite impossible to credit this denial.

It is alleged that some months ago the defendant was arrested in New Castle County under a similar complaint, and that those proceedings were abandoned by reason of his agreement to pay his wife a certain sum of money. We know nothing as to the terms of this alleged agreement—as it was not proved—but it is of no consequence in this case, as it is admitted that the defendant has wholly failed to pay his wife anything under it.

The defendant owns real estate in the State of New York which he says is assessed at $8,700, and which he values at $10,000.

He is a printer by trade, and is now employed as a newspaper reporter.

He is able to support his wife, and without reasonable cause neglects to do so.

The Court are unanimous in the opinion that he should be required to do so, and that these proceedings are properly taken.

The defendant, with sureties, entered into a recognizance before a Justice of the Peace conditioned to appear in this Court to answer the complaint of his wife, and not depart the Court without leave.

He was present at the taking of the testimony and was examined as a witness in his own behalf.

When today he was called he did not answer, and was found to have absconded, and his recognizance was thereupon forfeited.

Under these circumstances the question is presented, whether we have the right to proceed to judgment in his absence. The majority of the Court are of the opinion that we have the right, and that it is our duty to do so.

This is not, strictly speaking, a criminal proceeding.

The judgment against the husband is not as punishment for anything he has done, but a mode of enforcing in the future his duty to support his wife.

The order is for the payment of money, and the mode of enforcing it is the giving security, and being committed to jail until the order is complied with, or a discharge by the Court.

The nearest analogy known to us is the sentence in misdemeanors to pay a fine and costs, and stand committed to the custody of the sheriff until payment. In such cases the imprisonment is not the punishment, but a mode of enforcing it.

While it is usual to require the presence of the defendant when sentence of fine only is imposed in cases of misdemeanors, it is not essential, and the Court may in its discretion pass sentence in his absence.

Where corporal punishment is to be inflicted it is necessary that the defendant be personally before the Court at the time of sentence, but where a pecuniary penalty only can be awarded, judgment may be given in his absence.

*1 Chitty Crim. Prac.*, 695.

It is discretionary with the Court to require his presence at the time of sentence if a fine is to be imposed.

*21 Am. & Eng. Ency. of Law (1893) 1068.*

In *King vs. Constable, 7 Dowling & Ryland, 663*, the defendant, a Justice of the Peace, had been convicted on indictment for misdemeanor in office. The Attorney-General prayed judgment. Counsel for the defendant moved that his personal attendance might be dispensed with on the ground of age and infirmity. The Court held that he must appear in person unless some reason for his absence was assigned on affidavit. At a subsequent session an affidavit of extreme age and ill health being filed, the Court dispensed with his personal presence and pronounced judgment in his absence, imposing a fine of one hundred pounds.

In *Son vs. People, 12 Wend., 344*, the charge was violation of the fraudulent debtors' act, by the disposal of certain personal property contrary to the statute, being a misdemeanor

punishable by fine. The verdict of the jury was guilty. The judgment was that the defendant pay a fine of ten dollars and stand committed until the same should be paid. The defendant was not present when the judgment was pronounced. On *certiorari* to the Supreme Court, it was held that "It is not necessary that a defendant in a criminal proceeding should be present in court when judgment is pronounced, except when corporal punishment is inflicted,"

"The imprisonment in the present case was no part of the punishment," "If the fine is paid upon the defendant's being arrested, there is no authority to imprison. Judgment below is affirmed."

These authorities are in accordance with the practice of the courts of this State, and are abundantly sufficient for our present purpose.

There are many American cases which go much further, holding that even in cases of felony, where the penalty is imprisonment or other corporal punishment, if the defendant, being on bail, absconds during the trial, the verdict of the jury may be received and recorded, and sentence pronounced in his absence, on the ground that by voluntarily absenting himself he waives his privilege, and elects not to be present at any future stage of the case. *Lynch vs. Commonwealth, 88 Pa. St., 189; Fight vs. State, 1 Ohio, 180; State vs. Kelly, 97 N. P., 144; Price vs. State, 36 Miss., 531.* Without giving our sanction to these cases we recognize great force in the reasons assigned by the courts.

It has been suggested that we should not at the present term make the order, but leave it to be done at some future term, without another hearing, upon the conclusions reached by the judges now sitting. This might be done if the judges sitting at the present term, or a majority of them, should sit at such future term. But what assurance have we that this will be the case? Under our system future terms may be held by entirely different persons, and in the usual course of business it is not probable that we will all soon sit together in this County.

Cases can be found where the court trying the case takes the verdict of the jury, and at a subsequent term of the same court, composed partly, or possibly wholly, of different persons, sentence is pronounced. But if we adopt the course proposed in the present case, there would be no record of verdict or finding of any kind upon which a judgment or order could be rendered at a future term, and the case would of necessity have to be heard *de novo*.

This would result in a failure of justice, as it would be quite impossible to bring again from Chicago the complainant, and again secure the testimony which we have heard.

Unless controlled by the authority of well-adjudged cases we would not be justified in allowing the defendant by his wrongful act to accomplish this result.

Following well-established precedent, and justified by reason, we are of the opinion that judgment should be rendered at this time.

Let the following order be entered :

And now, to wit, this thirteenth day of April, A. D. one thousand eight hundred and ninety-eight, this case having been heard and fully considered, it is ordered that the said Harry L. McCullough pay to his wife, Julia M. McCullough, the sum of twenty-five dollars monthly, the first payment thereof to be made on the thirtieth day of May next ensuing, for her comfortable support and maintenance ; and that he give security by one or more securities to the State of Delaware in the sum of fifteen hundred dollars for compliance with this order, and upon failure to comply with this order, it is ordered that the said Harry L. McCullough be committed to the county jail, there to remain until this order is complied with or he be discharged by order of the Court.

And the said Harry L. McCullough having departed the Court without leave, it is further ordered that a bench warrant be issued to the sheriff of Kent county for the arrest of the said Harry L. McCullough.

BOYCE, J., concurred.

LORE, C. J., (dissenting):—The defendant, Harry L. Mc-Cullough, was in this Court under recognizance sent up by a Justice of the Peace for this county, under a charge of failure to support his wife, Julia M. McCullough. On Wednesday, April 27th, the defendant being present, the Court heard the evidence but did not conclude the case. On Thursday, April 28th, the defendant being called, failed to appear; the case went over until Saturday, April 30th. The defendant was still absent. The Court, upon consideration, concluded that the defendant pay his wife the monthly sum of twenty-five dollars hereafter for her maintenance, in pursuance of the statute. The question then was, should sentence be pronounced upon the defendant in his absence.

The majority of the Court held that it could; and made an order upon him, to give one or more sureties for the payment of the said monthly sum as it fell due, and on failure to comply therewith, that he be committed to the county jail. The recognizance having been forfeited, it was further ordered that a bench warrant be issued for the defendant, to enforce the said order or sentence.

In my judgment such order or sentence was without warrant. If such authority exists it must be found in the statute itself, or in our practice or in common law precedents.

The well-recognized and only orderly method, after the conclusion of the Court had been reached, was to have the defendant called for judgment or sentence. If he failed to appear, then to forfeit his recognizance, and issue a bench warrant to bring him before the Court, and when so before the Court then to make the order or impose the sentence; that he give one or more sureties for the payment of the money, or, in default, to commit him to the county jail.

The statute contemplates the presence of the defendant when the order is made; as it provides that he shall give one or more sureties, who are to be approved by the Court. The approval of such sureties is a judicial act and cannot be delegated to the sheriff. This sentence having been pronounced in the absence of the defendant, there is no writ or process for its

enforcement known to the common law or provided by the statute. This is conclusively shown by the fact that, in the efforts to enforce the judgment, the majority of the Court found it necessary to issue a bench warrant ; which is not a writ in execution of the sentence already pronounced, but is process to bring the defendant before the Court to receive sentence. We have here, therefore, the illogical proceeding of first sentencing the defendant in his absence, and then issuing process to bring him before the Court for sentence ; when sentence has already been imposed, unless the one already pronounced is a nullity. When a sentence is of such character that no writ can be framed or issued to enforce it, of necessity, the accused must be present when it is imposed or you are reduced to the absurd position of passing a sentence which cannot be executed.

I can find no statutory authority, nor is there any common law precedent ; nor is there any necessity for such an illogical and dangerous proceeding.

Manifestly the statute does not provide that the defendant may be sentenced in his absence.

It is contended that sentence may be pronounced by analogy to common law proceedings in cases of misdemeanor, where the right to sentence in the absence of the defendant has been recognized. But it will be found that sentence in the absence of the defendant, in all such cases, was imposed where the penalty was a fine only ; and then only because there was a common law writ of *capias* for the enforcement of the sentence, viz : the collection of the fine. Such collection was a ministerial duty and could be performed by the sheriff without the further intervention of the Court. On this point the current of authorities is absolutely unbroken.

The Duke's case, in Queen Anne's time, *1 Salkeld, 400*, is the leading case. The crime charged is perjury.

Holt, C. J., says :—"Judgment cannot be given against a man in his absence for a corporal punishment, and there is no such precedent ; a *capias ad satisfaciendum Domino Regi pro fine* is common, put there never was a writ to take a man and put

him in the pillory; so says Sir Samuel Alfrey upon search of pre-cedents.'' For the same reason it is manifest that no writ can be issued to take a man and compel him to give one or more sureties, or that he be committed to the county jail.

In *First Chitty*, *C. L.*, *696*, it is laid down: "Where a person is committed to prison, it ought to appear upon the record, that he was present at the time of the committal." *Ibid*, *664*, the rule is stated as follows: "Where the judgment against the defendant could only be the payment of a fine the Court might dispense with his personal appearance."

In *Son vs. The People*, *12 Wendell*, *344*, which was a misde-meanor for fraudulently disposing of property in fraud of creditors, the Court, in the absence of the defendant, imposed a fine of ten dollars, and that he stand committed until the fine be paid. SAVAGE, C. J., gives the following reasons: "The true reason why a fine might be imposed in the absence of the prisoner, and not a judgment that he be put in the pillory or imprisoned was that there is a regular process to collect the fine, but none to take a man who is at large and put him in the pillory." Equally it may be said that there is no regular process to take him and compel him to give one or more sureties or commit him to the county jail, as in the case before us.

In *The People vs. Winchell*, *7 Cowan*, *525*, which was a case of perjury, Judge Cowan, the able reporter, states the rule to be that "the power of sentencing in absence seems to be confined to the case of fine exclusively."

From this rule I have been able to find no departure in the English decisions. The rule is clear and uniform, that the right to sentence in the absence of the accused is confined to cases where a fine only may be imposed; and does not extend to any other penalty.

The cases in this country cited by my brethren in support of their views, recognize this rule. The question in all of them that I have been able to examine turns upon the right of the Court to receive the verdict of a jury in the absence of the accused. In misdemeanors the right to try the accused and to

receive the verdict of the jury in his absence has been recognized in, and is the law of this State. Sentence, however, has not been pronounced in his absence, unless it may have been in the case of a fine only. In *Price vs. The State, 36 Miss., 531*, cited by the Court, the question was the right to receive a verdict in the absence of the defendant.

In *Fight vs. The State, 7 Ohio, 180*, the charge was counterfeiting. At the November term, 1834, the prisoner was placed on trial before the jury, the testimony being partly heard, Court adjourned until the next morning, the accused being called, made default. The Court, on motion, issued a bench warrant, and proceeded to charge the jury. The jury retired, and the next day brought in a verdict of guilty, which was received by the Court in the absence of the defendant. At the March term, 1835, Fight appeared and moved for a new trial; the fourth reason being that the verdict was rendered in his absence. The Court overruled the motion, and then, the prisoner being in Court, sentenced him to three years' imprisonment. So that the question of imposing sentence in his absence was not raised. The question before the Court was whether a verdict could be rendered in the absence of the accused. The Court held, "If the trial is once commenced, and the prisoner in his own wrong leaves the Court, absconds, leaving his case to the management of counsel and runs away, I can find no adjudged case to sustain the position, that in England, the proceedings would be stayed. Such a case must form an exception to the general rule, and the verdict may be legally received in the absence of the accused." To this extent our Courts have gone. The learned Judge (Wood) by way of *obiter dictum*, goes further, and says, "In England, in misdemeanors, where the defendant is on bail, a trial, conviction and *sentence* may be had in his absence. He is present or not at his option. In felonies, a different rule, it is true, prevails. The reason of this difference in the mode of proceeding in the two cases cannot perhaps at this time be satisfactorily explained ; or rather no satisfactory reason can be given for it." Evidently, the Court in this dictum, that sentence might be passed in the absence of the accused, overlooked the English cases which confine the right to sentence in the absence of the accused to cases

where the penalty is a fine only ; and give as the reason, that the judgment may be executed by the well-known common law writ of *capias.*

In another case relied upon (*Lynch vs. Commonwealth, 88 Pa. St., 189*) the question was whether the jury could render a verdict in the absence of the accused ; larceny being a misdemeanor under the statute. AGNEW, J., uses this language : " The mere voluntary absence at the rendition of the verdict, by one out on bail, who has appeared or has been tried regularly, is not a fatal error. He loses no valuable right thereby, for he may move for a new trial, or in arrest of judgment, and cannot be sentenced until he appears."

These cases certainly do not sustain the position, that sentence may be passed in the absence of the accused in a case like this. In the Fight case the accused was present when the sentence was imposed. In the Lynch case, Judge Agnew expressly ruled that the accused could not be sentenced until he appeared.

There being, therefore, no statutory or common law authority to sentence a man in such a case in his absence, it must rest, if anywhere, upon the plea of necessity. But there seems to be no such justification in this case. The Court can formulate its finding of what ought to be done, and spread it upon the record, if needful to govern the action of the Court in passing sentence at the next session if the defendant by that time shall be taken upon the bench warrant ; just as the verdict of a jury may be received and put of record. No sentence can be effective until the defendant is found in the jurisdiction of the Court and brought before it. When so found, and not until then, can he be compelled to obey the law or suffer the penalty. As the case now stands, we may be confronted by two sentences ; one inoperative, in the air as it were, the defendant not being in reach; the other to be imposed in case the accused should be taken on the bench warrant which has been issued.

For these reasons I am unwilling to experiment in this new method of imposing a sentence and attempting to enforce it ; and am therefore compelled to dissent from the judgment of the

majority, that we sentence McCullough in his absence. The case does not come within the rule, so clearly defined and well settled, that sentence may be so imposed only in cases where the penalty is restricted to a fine exclusively.