Laurence H. Smith *v.* The State.*

(*Nashville.* December Term, 1928.)

Opinion filed March 31, 1928.

1. HUSBAND AND WIFE. FAILURE TO SUPPORT.

The Act of the Legislature making it a misdemeanor for a husband
to willfully and without good cause neglect or fail to provide for
. his wife according to his means, is a remedial statute, designed
to secure a proper support for a dependent wife, rather than to
punish a husband for his dereliction. (Post, p. 603.)

Citing: Acts of 1915, chapter 125.

2. HUSBAND AND WIFE. FAILURE TO SUPPORT. PROS-
ECUTION.

The arraignment of a husband before the judge of the Juvenile
Court, with opportunity there to plead guilty, is jurisdictional,
without which the husband is not subject to prosecution in the
criminal court. (Post, p. 603.)

Citing: Acts of 1915, chapter 125, secs. 2 and 3.

3. HUSBAND AND WIFE. FAILURE TO SUPPORT. PROSECU-
TION. COMMENCEMENT OF PROSECUTION.

The issuance of a warrant by the Juvenile court being the com-
mencement of a prosecution of which the indictment in the crim-
inal court is a subsequent step, the neglect or failure to provide
proven as the basis of a conviction must have occurred prior to the
commencement of the proceeding in the juvenile court. (Post,
p. 604.)

4. HUSBAND AND WIFE. FAILURE TO SUPPORT. PROSECU-
TION. COMMENCEMENT OF PROSECUTION. TRIAL.
EVIDENCE. FORMER JEOPARDY.

The contention that the defendant was twice indicted in the criminal court, that a verdict of acquittal had been entered on the first indictment before the present indictment was returned by the grand jury, though the first indictment is not made a part of the record and no former jeopardy is plead; but that the defendant could not be convicted upon evidence of his neglect or failure to provide for his wife occurring prior to the date of the former trial amounts in effect to a plea of former jeopardy, but such plea cannot be sustained here for the reason that the former indictment is not made a part of the record so that this court can determine whether it is a valid indictment. (Post, p. 604.)

## 5. AUTREFOIS ACQUIT. INDICTMENT.

To entitle a prisoner to the benefit of a plea of autrefois acquit, it is necessary that the crime charged in the last bill of indictment be precisely the same with that charged in the first, and that the first bill of indictment is good in point of law. (Post, p. 604.)

Citing: Hite v. State, 17 Tenn. (9 Yerg.), 357, 375.

## 6. HUSBAND AND WIFE. FAILURE TO SUPPORT. ARRAIGN-MENT. JUVENILE COURT. INDICTMENT.

Upon an. indictment of a husband for failing to support his wife it is not necessary that the defendant be again arraigned before the juvenile court. A second indictment returned at the same term of the criminal court relates back to the original proceeding in the juvenile court. (Post, p. 605.)

## 7. HUSBAND AND WIFE. FAILURE TO SUPPORT. PURPOSE OF STATUTE.

The primary and more immediate object of the statute which makes it a misdemeanor for the husband to fail to support his wife is to deter husbands from leaving their wives to endure privations and to compel contributions by them in furnishing necessities, while the secondary purpose is to protect society against the necessity of having to support a deserted and dependent wife as a charge on the public. (Post, p. 605.)

Citing: State v. Latham, 136 Tenn. (9 Thomp.), 30, 36.

8. HUSBAND AND WIFE. FAILURE TO SUPPORT. VENUE.

When a citizen of another State, having there assumed the legal
obligation of the support of a wife and child, and removes to this
State and takes up his residence here, he becomes burdened with
the same duty and obligation; and one who establishes a tem-
porary residence here, and during the continuation of such resi-
dence willfully and without good cause fails and neglects to ren-
der that support to his wife which the statute requires, the statute
is violated here and the venue will lie in the county of such
temporary residence.    (Post, p. 605.)

Citing: Poindexter v. State, 137 Tenn. (10 Thomp.), 386; Common-
wealth v. Acker, 197 Mass., 91, 83 N. E., 312, 125 Am. St. Rep.,
328.

9. HUSBAND AND WIFE. FAILURE TO SUPPORT. FINANCIAL
STATUS OF HUSBAND. JUDGMENT.

Under an indictment brought against a husband for the failure to
support his wife, the support to be exacted is to be measured not
only by the needs of the wife, but by the ability or means of the
husband, and in every case of this character the judgment fixing
the husband's obligation for the future support of his wife, should
contain a provision retaining jurisdiction of the case, in order
that the judgment rendered may be modified if subsequent de-
velopments so require.    (Post, p. 608.)

*Headnotes 1. Husband and Wife, 30 C. J., section 920; 2. Husband
and Wife, 30 C. J., section 937; 3. Husband and Wife, 30 C. J., section
925; 4. Husband and Wife, 30 C. J., section 948; 5. Criminal Law, 17
C. J., section 3459; 6. ———; 7. ———; 8. ———; 9. Husband and
Wife, 30 C. J., section 955.

FROM DAVIDSON.

Appeal from the Criminal Court of Davidson County.
—HON. FRANK M. GARARD, Judge.

LEVINE & LEVINE and R. A. GOODMAN, for plaintiff in
error.

JOHN J. HOOKER and J. W. COOPER, Assistant Attorney-General for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an appeal by the plaintiff in error, Laurence H. Smith, from a judgment rendered by the Criminal Court of Davidson County upon an indictment charging that the plaintiff in error had willfully and without good cause failed and neglected to provide for his wife, Mary Lucile Smith, according to his means, etc.

The appeal is prosecuted under assignments of error that there is no evidence to sustain the conviction; and the particular contention of the plaintiff in error under said assignments is that the facts proven do not show a case within the jurisdiction of the trial court, nor an offense committed in the State of Tennessee.

There is little controversy in the evidence, and the material facts are as follows. The plaintiff in error and the prosecuting witness were married September 17, 1919, in the State of South Carolina, and lived together in South Carolina and in Georgia until January, 1924, at which time they separated in Atlanta, Georgia, where they then resided.

The plaintiff in error is a native of Alabama, and, after his separation from his wife, returned to Alabama, and resumed his residence, presumbly, at the home of his father. In May, 1927, he obtained employment as an organizer for a national organization, and on May 5, 1927, came to Nashville, under said employment. He made his headquarters in Nashville, carrying on his work at that place and in other counties of Central Tennessee,

until August 11, 1927, on which date he was arrested under a warrant issued by the Juvenile Court at Nashville, on complaint of his wife, charging him with the offense of which he has now been convicted. After his arrest, he declined to talk to his wife about the matter, in the presence of the Judge of the Juvenile Court, and on his plea of not guilty, he was bound over to the criminal court, according to the procedure defined in the statute, Acts 1915, chapter 125.

Upon his arrest, August 11, 1927, the plaintiff in error was requested to resign his position, and did so. He then undertook to secure other employment in Nashville, and at the date of the trial, October, 1927, testified that he was awaiting a promise of employment with an oil company in Nashville, supporting his testimony with the testimony of his prospective employer. At the date of his arrest, plaintiff in error was receiving a salary of $150 per month, with his expenses paid by his employer.

Neither the plaintiff in error nor his wife disclosed the cause of their separation. The wife protested her affection for the plaintiff in error and her willingness to resume her life with him. He contended himself with a statement that he would not live with her, and made no effort to justify his failure to contribute to her support since the separation in 1924.

(1) It has been repeatedly held by this court that the statute, Acts 1915, chapter 125, making it a misdemeanor for a husband to willfully and without good cause neglect or fail to provide for her wife according to his means, is a remedial statute, designed to secure a proper support for a dependent wife, rather than to punish the husband for his dereliction. (2) Accordingly, it has been held that the arraignment of the husband be-

fore the Judge of the Juvenile Court, with an opportunity there to plead guilty, as provided in sections 2 and 3 of the statute, is jurisdictional, without which the husband is not subject to prosecution in the criminal court. (3) The issuance of the warrant by the Juvenile Court is, therefore, the commencement of the prosecution, of which the indictment in the criminal court is a subsequent step. The neglect or failure to provide proven as the basis of a conviction must, therefore, be a neglect or failure to provide occurring prior to the commencement of the proceedings in the Juvenile Court.

It is sufficient that the proceedings in the Juvenile Court be shown in the evidence offered in support of the subsequent indictment, as was done in the present case.

(4) It appears from the bill of exceptions that the plaintiff in error was twice indicted in the criminal court, and that a verdict of acquittal had been entered on the first indictment, before the present indictment was returned by the grand jury. The first indictment is not made a part of the record in this case, and it is conceded on the brief filed for the plaintiff in error that no question of former jeopardy is made; but it is contended that the plaintiff in error could not be convicted upon evidence of his neglect or failure to provide for his wife occurring prior to the date of the former trial.

This contention amounts, in effect, to a plea of former jeopardy, and cannot be sustained for the reason that the former indictment is not made a part of the record, and we cannot determine whether it was a valid indictment. (5) "To entitle a prisoner to the benefit of the plea of *autrefois acquit*, it is necessary that the crime charged in the last bill of indictment be precisely the same with that charged in the first, and that the first bill of indict-

ment is good in point of law.'' *Hite* v. *State*, 17 Tenn. (9 Yerg.), 357, 375.

*(6)* Upon the failure of the indictment first returned, it was not necessary that the plaintiff in error be again arraigned before the Juvenile Court. The second indictment, returned at the same term of the criminal court, related to the original proceedings in the Juvenile Court.

The evidence shows that the warrant was issued by the Juvenile Court and the plaintiff in error was arrested thereunder, before he had knowledge of the presence of his wife in Tennessee. She had been in the State only a few days prior to August 11, 1927. It is obvious, therefore, that the prosecution cannot be made to depend upon any actual or constructive residence of the wife within the State. The question for determination is, therefore, whether a husband, having abandoned his wife in another State, is guilty of violating the statute in Tennessee by continuing to neglect or failing to provide for his wife according to his means after coming into the State.

*(7)* In *State* v. *Latham,* 136 Tenn., 30, 36, this court held that the primary and more immediate object of the statute under consideration is ''to deter husbands from leaving their wives to endure privation, and to compel contributions by them to the support of their wives in the furnishing of necessities;'' while a secondary purpose is to protect society against the necessity of having to support a deserted and dependent wife as a charge on the public.

*(8)* In *Poindexter* v. *State,* 137 Tenn., 386, the court held that the primary purpose of the statute being the protection of a dependent wife, ''the venue should be laid in the county where the husband or father resides and

where he is under legal as well as moral obligation to provide for his family.''

In the Poindexter case the question for decision was whether the venue of a prosecution for the willful neglect or failure to support a child was properly laid in the county of the father's residence, rather than in the county where the child resided, and the court did not have for decision whether the father could be prosecuted in the county of his residence for a failure to support his child whom he had abandoned in another state and who was not a resident of the State. In support of the conclusions reached by the court, both in *State v. Latham, supra,* and in *Poindexter v. State, supra,* the court, however, cited with approval the case of *Commonwealth v. Acker,* 197 Mass., 91, 83 N. E., 312, 125 Am. St. Rep., 328, wherein it was held that a father residing in Massachusetts, was guilty of an offense against the laws of the State, by reason of his neglect to provide for his child, notwithstanding the child was a nonresident and had never been within the limits of the State. In so holding, the Supreme Court of Massachusetts said:

''While one of the objects of the statute is doubtless to prevent wives and children from becoming a charge upon the public for their support, this is not its chief object. The higher and more important purpose of the Legislature in passing the law was to provide directly for neglected wives and children, and to punish the infliction of this kind of wrong upon them, and, by the fear of punishment, to deter husbands and fathers from leaving their families to endure privation. There is nothing either in the words or the object of the statute that should limit its application to cases where the neglected person happens to be in this commonwealth at the time

of the neglect or at the time of the prosecution for it. A person domiciled in this commonwealth is amenable to the statute, whether his minor child is here when the wrong upon him is committed, or has been carried out of the commonwealth by his father, or has been left by him in another state or country, if, while residing and having his domicile here, he unreasonably neglects to provide for the child. The offender is here, within our jurisdiction. While residing here he ought to make provision for the support of his wife and minor children, whether they are here or elsewhere. If he fails to do this, his neglect of duty occurs here, without reference to a place where the proper performance of his duty would confer benefits.''

The court, in *Commonwealth* v. *Acker,* expressly pretermitted the question whether, to sustain the prosecution, it was necessary to show that Acker had established a permanent as distinguished from a temporary residence in the State.

We are of the opinion that the reasoning of the court in *Commonwealth* v. *Acker,* quoted above, is sound, and should be followed in the construction and enforcement of our statute. When a citizen of another State, having there assumed the legal obligation of the support of a wife or child, removes to this State and takes up his residence here, he comes burdened with the same duty and obligation, and for him to continue in the State without meeting and performing such obligation is to violate not only the letter but the spirit of the statute.

We can see no reason for limiting the application of the statute to a delinquent father who has established a permanent residence or legal domicile in the State. Certainly the statute would not be applicable to one found

in the State on a journey or to a mere transient, but we think the statute is violated by one who establishes a temporary residence, and during the continuation of such residence willfully and without good cause fails and neglects to render that support to his wife and dependent child which the statute requires.

The plaintiff in error has been in Tennessee working in and out of the City of Nashville, from May 5, 1927, to August 11, 1927, when the warrant for his arrest was issued. On the trial of the case, he offered as an excuse for failing to seek other employment, that he was awaiting a promise of employment with a mercantile company in Nashville. It is our opinion that his residence in the county where the prosecution was brought from May to August was a sufficient residence to render him amenable to the statute invoked.

It follows that the assignments of error made in this court will be overruled, and the judgment of the trial court affirmed.

The case will be remanded to the trial court for execution of the judgment rendered, and on the remand the trial court will have jurisdiction to hear any reasonable petition, supported by evidence, for a modification of the order fixing the amount required to be contributed by the plaintiff in error for the support of his wife.

*(9)* In *Payne* v. *State,* 154 Tenn., 47, this court observed that in such a case as this the financial status and ability of a convicted defendant might be changed during any great lapse of time between the rendition of judgment and its enforcement, and that the policy of the statute would forbid the incarceration of the defendant, if he is unable to pay as required by the judgment. The support to be exacted is to be measured not only by the

needs of the wife, but by the ability or means of the husband. So, we think that in every case of this character the judgment fixing the husband's obligation for future support of his wife, should contain a provision retaining jurisdiction of the case, in order that the judgment rendered may be modified if subsequent developments so require, in the discretion of the court.