ROGERS, Justice.
 

 On August 13, 1937, an information was filed against Charles Borum in the Fourth judicial district court, parish of Ouachita, charging him with failing and neglecting to provide for the support of his two minor children, they being in destitute or necessitous circumstances, since on or about the 1st day of September, 1934.
 

 Before going to trial on the charge, the defendant filed a plea to the jurisdiction of the court, ratione materias and ratione personas, on the grounds, first, that defendant was not a resident of the parish of .Ouachita, nor was he a resident of that parish on September 1, 1934, nor at any time thereafter; and, second, that his two minor children and his divorced wife, Marie Clark Borum, had resided continuously in Adams county, Miss., or at other places in Mississippi, since the early part of the year 1934, and have never at any time since that date lived or resided in Ouachita parish, or in any other parish of this state.
 

 Defendant’s plea to the jurisdiction was taken up and tried, and, after hearing all the witnesses testify, the trial judge overruled the plea. Thereafter, defendant was tried and convicted on the charge and sentenced to four months’ imprisonment in the parish jail. At defendant’s instance, this court issued a writ of certiorari to bring the case here for review of the merits of defendant’s plea to the jurisdiction of the trial court.
 

 At the hearing on defendant’s plea, the following facts were established, viz.:
 

 The defendant Charles Borum and Marie Thompson Clark were married at Natchez, Miss., on June 12, 1924. In August, 1927, defendant, his wife, and their child, who had been born in Natchez in 1925, removed to Baton Rouge, La. A second child was born of the marriage in Baton Rouge during the year 1933. Defendant and his family continued to reside in Baton Rouge until January 5, 1934. While living in Baton Rouge defendant was engaged in the hotel business, either for himself or for others. On January 5, 1934, defendant left Baton Rouge, taking his wife and two minor children to the home of her parents in Natchez, Miss. Defendant remained in Natchez over night, leaving the next day for Texas, for the purpose of seeking employment. After remaining in Texas for a short time, defendant went to "Jackson, Miss., where he worked in the Edwards Hotel. On or about September 1, 1934, defendant went to Monroe, La., and secured employment as a clerk in the Alvis Hotel. He resided in Monroe until on or about April 15, 1935, when he left for Alexandria, La. After remaining there a few months he went to Beaumont, Tex., which he claims is his legal residence. This was in August, 1935. Thereafter, until January, 1937, defendant traveled extensively, visiting Louisiana, Alabama, Georgia, South Carolina, and California. In January, 1937, he returned to
 
 *851
 
 Beaumont, where he remained a short time. From Beaumont he went to Tulsa, Okl. On August 11, 1937, he arrived in Monroe, where on August 13, 1937, the information on which he is being prosecuted was filed. At that time, defendant was not residing in Monroe. He was merely passing through that city on his way, as he claims, to his home in Beaumont.
 

 Defendant’s first wife and children never returned to Louisiana. At the time defendant was charged with the nonsupport of his children, his first wife and his children were living with her parents in Natchez. Defendant’s first wife is employed as a teacher in the public schools of Mississippi, in which employment she earns $125 a month during the school term of nine months.
 

 Mrs. Marie Clark Borum sued the defendant Charles Borum for a divorce in the district court for the parish of East Baton Rouge, and she obtained a final decree in July, 1937. Subsequently, defendant remarried. His second wife is a psychologist, and is professionally known as “Madame Laverne.” At the time the information was filed against defendant, he and his second wife were temporarily in Monroe, where she was operating a “psychological studio.” Defendant himself was not employed.
 

 After leaving his first wife and children with her parents in Natchez, defendant seems to have entirely forgotten his family. He never returned to Natchez to see them; nor did he contribute anything to their support.
 

 Defendant is not charged with failing and neglecting to provide for the support of his first wife. The charge against him is that he failed and neglected to provide for the support of his two minor children while he was living and working in Monroe, La., from September 1, 1934, to April 15, 1935. During that period of about seven and one-half months defendant earned $75 a month as a clerk at the Al-vis Hotel, and, in addition thereto, was furnished a room without cost by the operator of the hotel.
 

 The offense with which defendant is charged is denounced and punished by Act No. 77 of 1932, which has apparently superseded Act No. 34 of 1902. Both legislative . acts make it a misdemeanor for any person to desert or willfully neglect to provide for the support and maintenance of his wife or minor children in destitute or necessitous circumstances, and provide a penalty therefor.
 

 A father’s duty is to support his minor children. That duty arises from the fact of paternity, as provided in article 227 of the Civil Code. It is not discharged by a divorce,, nor by the assignment of the custody of the children to the wife. State v. Seghers, 124 La. 115, 49 So. 998.
 

 The legislation requiring a parent to provide for his destitute or necessitous minor children is for the benefit of the children. It is enacted for the purpose of enforcing the natural duty.of parents to their children.
 

 
 *853
 
 This duty is owing the children at the matrimonial domicile or at the place of residence of the recalcitrant father. State v. Fick, 140 La. 1063, 74 So. 554; State v. Smith, 145 La. 913, 83 So. 189.
 

 Willful nonsupport of minor children by their father is a continuing offense. State v. Morel, 146 La. 6, 83 So. 318. So much so, that such nonsupport during a period of time not covered by a prior conviction is a distinct offense, to which a plea of autre fois convict is not applicable. In re Baurens, 117 La. 136, 41 So. 442. The offense is committed at the place where the father may be found within the state, and not at the place of residence of the children. State v. Blache, 175 La. 718, 144 So. 430.
 

 Defendant contends that his wrongful act is not such as to make him amenable to the laws of this state, because his minor children were residing outside the átate at the time he is charged with their nonsupport.
 

 If the domicile of defendant and his family had always been in Mississippi, and if his first wife and children had never acquired a domicile in Louisiana and defendant was only temporarily in this state, there might be some merit in his contention. But that is not the case.
 

 On January 5, 1934, defendant’s domicile and that of his family was in Baton Rouge, La. The mere fact that on that date he took his wife and children to her father’s home in Natchez, Miss., in order that they might obtain there the support which' defendant was either unable or unwilling to furnish them, did not of itself constitute Natchez their domicile.
 

 After leaving Baton Rouge and abandoning his .wife and children in Natchez, defendant moved from'place to place, never staying longer than a few months in any one place. At no time has he returned to Baton Rouge, and there is nothing in the record to indicate that he ever intended to return there.
 

 Defendant’s duty to support his minor children accompanied him wherever he went. It accompanied him into this state on September 1, 1934, on which date he arrived in Monroe, where he secured what his employer presumed to be permanent employment as a clerk in the Alvis Hotel. Defendant resided and worked in Monroe from September 1, 1934, to April 15, 1935.
 

 The offense of nonsupport of children is not dependent upon the commission of any affirmative act, but on the omission of the plainest natural duty. Necessarily, then, the venue of the offense depends on wherever the omission to perform the duty occurs, which in defendant’s case was in Monroe, La., during the period elapsing between September 1, 1934, and April 15, 1935. Defendant owed no such duty elsewhere, and because of the position of his children must have owed the duty in the parish of Ouachita, where Monroe is situated, or not at all.
 

 In State v. McCullough, 1 Pennewill 274, 17 Del. 274, 40 A. 237, it was held
 
 *855
 
 that it was sufficient that the husband be in the state, and that he neglect without cause to support his wife, regardless of where he abandoned her.
 

 In Commonwealth v. Acker, 197 Mass. 91, 83 N.E. 312, 125 Am.St.Rep. 328, under a statute prescribing the punishment for neglect to support wife or minor child, and expressly providing that the complaint may be made to the court of the district in which the husband or wife, or either of them, is living, it was held that a father may properly be prosecuted for the offense in the place of his residence, although the child was born in a foreign country and is still residing there.
 

 In that case, in refusing to sustain defendant’s contention that the nature of the offense is such that it cannot be committed if the minor child is an alien whose place of abode is not in the commonwealth, the Supreme Judicial Court of Massachusetts'well said: “While one of the objects of the statute is doubtless to prevent wives and children from becoming a charge upon the public for their support, this is not its chief object. The higher and more important purpose of the Legislature in passing the law was to provide directly for neglected wives and children, and to punish the infliction of this kind of wrong upon them, and, by the fear of punishment to deter husbands and fathers from leaving their families to endure privation. There is nothing either in the words or the object of the statute that should limit its application to cases where the neglected person happens to be in this commonwealth at the time of the neglect, or at the time of the prosecution for it. A person domiciled in this commonwealth is amenable to the statute, whether his minor child is here when the wrong upon him is committed, or has been carried out of the commonwealth by his father, or has been left by him in another state or country, if, while residing and having his domicile here, he unreasonably neglects to provide for the child. The offender is here, within our jurisdiction. While residing here he ought to make provision for the support of his wife and minor children, whether they are here or elsewhere. If he fails to do this, his neglect of duty occurs here, without reference to a place where the proper performance of his duty would confer benefits.”
 

 The decision in Commonwealth v. Acker is peculiarly applicable to this case. It is true that our statute does not in terms provide that complaint of nonsupport of a minor child -may be made to the parish in which the father is living, but under our well-settled jurisprudence it has that effect. See State v. Blache, 175 La. 718, 144 So. 430, and the cases therein cited.
 

 Our statute, like the Massachusetts statute, does not, either in its words or in its object, limit its application to cases where the neglected child happens to be in this state at the time of the neglect or at the time of the prosecution for it. A father residing in this state ought to make
 
 *857
 
 provision for his minor child, whether it' is here or elsewhere. If he fails to do this, his neglect of duty occurs here, without reference to the place where the discharge of the duty would confer benefits.
 

 The wife and the child continue to be the beneficiaries of the law which requires the husband and father to provide for their support, wherever they may lawfully reside, and he remains liable for such support wherever he may remain or choose to remove himself within the reach of the statute. State v. Fick, 140 La. 1063, 74 So. 554.
 

 Defendant was residing in this state at the time he is charged with neglecting to support his minor children, and he was also within the state at the time of his prosecution for such neglect. In these circumstances, we do not think it can be successfully contended that the courts of this state are not vested with jurisdiction both of his person and of the subject-matter of his offense.
 

 We are not concerned with the merits of the prosecution. This court is without authority, whether in the exercise of its supervisory jurisdiction or otherwise, to review the findings of the trial judge in a criminal prosecution upon a question of fact pertaining to the guilt or innocence of the defendant. In re Baurens, 117 La. 136, 41 So. 442.
 

 For the reasons assigned, the rule nisi herein issued is recalled, and relator’s demands are rejected.
 

 HIGGINS, J., absent