HUNTINGTON DENTAL SOCIETY OF HUNTINGTON, *etc.*

*v.*

DR. JOHN L. WINTON

(No. 9847)

Submitted October 2, 1946. Decided December 21, 1946.

*L. W. Blankenship,* for appellant.

*Scott & Ducker* and *Peyton & Winters,* for appellee.

KENNA, PRESIDENT:

This proceeding was instituted by the Huntington Dental Society of Huntington, West Virginia, before the State Board of Dental Examiners for the purpose of revoking the license to practice dentistry of Dr. John L. Winton for unprofessional conduct in the practice of his profession in violation of Subsection 4 (j) of Code, 30-4-7, by associating himself with and lending his name to one Harry Devore, a dental technician alleged to be engaged in the illegal practice of dentistry. Dr. Winton appeared before the Board, filed a demurrer to the Society's complaint and, after demurrer overruled, filed an answer and the case proceeded to the taking of testimony. Upon final submission the Board revoked Dr. Winton's license and upon appeal to the Circuit Court of Cabell County its holding was reversed and the license reinstated, that court stating in an opinion made a part of the record that the evidence introduced by the Huntington Dental Society had failed to connect Winton with the illegal practice of dentistry on the part of Devore, thus by necessary implication stating that the illegal practice of dentistry by the latter had been established. From this appellate finding of the Circuit Court of Cabell County this appeal was granted.

Chapter 30 of our Code deals with the professions, including dentistry, and in separate Articles prescribes rules of conduct governing their practice. State Boards for each profession, with the exception of law, are created to govern the admission to practice in this State and pass upon the question of unprofessional conduct as defined by statute, having the power, in that connection, to suspend or revoke the license to practice in punishment

thereof. The general terms of the first Article of the Chapter determine the method of procedure before each Board, the nature of its hearings and the effect of its orders so that the rulings of this Court applicable to one Board as to the effect of its findings and orders are applicable to all Boards functioning under the same statutory provisions.

The most recent case in which this Court has considered and discussed at length the effect of the general provisions of Chapter 30 is that of *Mingo County Medical Society* v. *Simon,* 124 W. Va. 493, 20 S. E. 2nd 807, in which the first syllabus states plainly that the decision of the Public Health Council (here Board of Dental Examiners) revoking a license will not be disturbed upon appeal unless the Council has exceeded its power or based its decision upon a mistake of law. In *Board of Dental Examiners* v. *Hedrick,* 116 W. Va. 222, 179 S. E. 809, we held that the Board was not a judicial body and consequently did not have to follow technical rules of procedure in its hearings. We refer to those two cases in the hope that their careful reading will throw some light upon our view of this matter.

Code, 30-4-7, provides that the State Board of Dental Examiners may revoke a license to practice, among other reasons, for " * * * Professional connection or association with, or lending his name to another, for the illegal practice of dentistry, or professional connection or association with any person, firm or corporation, holding himself, themselves, or itself out in any manner contrary to this article."

From this record it would appear that prior to December, 1943, Harry Devore had had his laboratory at 1604 Madison Avenue in Huntington adjoining the offices of Dr. Nichols, a practicing dentist. In 1942 five indictments were returned against him in the Criminal Court of Cabell County for the illegal practice of dentistry, to each of which he pleaded guilty and was sentenced to thirty days in jail, the sentences to run concurrently. Devore served his time and Dr. Winton says he

heard nothing concerning the sentence until much later. At any rate, Dr. Nichols died some time before December, 1943, and Winton, whose office was then on Third Avenue, decided that he would move to the office Nichols had occupied, at the same time retaining his office on Third Avenue in order to keep from losing practice until he became permanently located.

In 1944 Devore was again indicted and Dr. Winton was questioned by the Huntington Dental Society concerning his association with him, pursuant to which he gave up his Madison Avenue office and practiced only at his Third Avenue location until after Devore's acquittal, Dr. Winton having been one of his principal witnesses. After Devore's acquittal he "started coming" to Winton's Third Avenue office and "picking up" impressions or molds made by Dr. Winton and taking them to his Madison Avenue laboratory for prosthetic work; or the making of artificial teeth mounted on plates. At about this time Dr. Winton consulted an attorney at law for the purpose of determining whether there was any reason why he should not occupy joint offices with Devore in the light of the fact that Devore had been indicted for the illegal practice of dentistry and acquitted. He was told that there was not, after which he rented six rooms at the corner of Eighth Street and Sixth Avenue, three of which he sublet to Devore and three of which, being front rooms, he occupied himself. Apparently they were adjoining rooms on the same side of a hallway.

The foregoing is taken from the entire record, which includes a transcript of the testimony taken at the 1944 trial of Devore, filed before the Board as an exhibit to the petition of the Huntington Dental Society. In addition, the Board considered the testimony of several witnesses appearing before it, principally that of a professional investigator employed by the Huntington Dental Society to investigate and report upon Dr. Winton's method of practicing. In addition to the investigator's testimony and that of the witnesses who corroborated it in part, the testimony of W. T. Miller is the only pres-

ent testimony introduced by the Huntington Dental Society before the Board. Dr. Winton's testimony in his own behalf and character witnesses complete the record. Devore did not appear, although his testimony is a part of the printed copy of the transcript of his own trial.

K. E. Von Lohen, a professional investigator employed by the Huntington Dental Society, evidently from Louisville, reached Huntington on the afternoon of September 26, 1944, and after having gotten in touch with the representatives of the Dental Society, he called Dr. Winton's office on the telephone and asked for an appointment and was told to come immediately and he would be seen. He went, accompanied by Mrs. Mary Taylor, found Devore at the office and recognized him as likely being the person with whom he had talked on the telephone. Being told that he wanted an upper and a lower plate, Devore seated him in a dental chair and stated that he must call Dr. Winton on the telephone. With whomever he talked, he asked: "Do you want me to go ahead and work on him?" Von Lohen did not hear the reply but states that Devore said that he would go ahead and "work on him", the patient. Devore then examined his mouth in detail, mixed a mortar or plaster to be used in taking an impression, placed a ladle containing the mixture in Von Lohen's mouth, made an impression and went back into his laboratory. Devore then came back to the dental chair and made an additional impression of warm wax, being dissatisfied with the first impression. After Devore made the second impression, he stated that he had finished and asked for and received a five dollar deposit, giving Von Lohen a receipt for the deposit signed "Dr. J. L. Winton by H. C. D.", Von Lohen using the name of K. E. Taylor, and telling him to return the following evening. As Devore was preparing the receipt Dr. Winton came into the office but Von Lohen did not speak to him nor did he speak to Von Lohen.

On the evening of September 28 at six-thirty Von Lohen returned to Dr. Winton's office and there first came into contact with a man the description of whom

indicates that it was Winton. Being informed that Von Lohen wished to see the "Doctor" who had taken his impression Tuesday evening, this man called to "Harry" and Devore appeared, placed Von Lohen in the dental chair and proceeded to fit the two plates, returning to the laboratory to grind them two or three times. As Von Lohen was leaving Devore explained that he was not permitted to make impressions nor to fit teeth, and that Dr. Winton "fronted" for him.

Von Lohen returned to Dr. Winton's office on the evening of Saturday, September 30, accompanied by Mrs. Elsie Evans. After Devore had finished the final fitting of the two plates for Von Lohen, Mrs. Evans asked him to examine a lower partial plate to which she would like to have a tooth added. Devore seated her in the dental chair and upon examining her mouth told her that work of that nature was out of his line and that she would have to see Dr. Winton. Von Lohen gave Devore a check drawn on a Huntington bank for $61.25 signed "K. E. Taylor", a deposit to cover having been made in that name. The witness stated that Dr. Winton made no examination and did no work on the plates that he paid for.

Mrs. Taylor and Mrs. Evans testified and in the main corroborated the testimony of Von Lohen. W. T. Miller, being the same W. T. Miller who testified in the trial that resulted in an acquittal, testified substantially as he did in that trial, the only difference being the statement that the old plate he was wearing at the time had become quite unsatisfactory and consequently that the work done in Dr. Winton's office was not a reproduction of the old plate but was the making of a new one.

Much of Dr. Winton's testimony we regard as argumentative. Without going into that phase of it, the two principal matters in which it contradicts the testimony of the Society concern the testimony of Von Lohen and that of Miller. Respondent admits that Devore called him the first evening Von Lohen went to his office but his

version of the conversation is a direct contradiction of Von Lohen's testimony. Winton says that Devore told him that there was a patient in the office who wished some impressions made, and that his response was: "Hold him. I will be there in a few minutes". It doesn't appear how long it took Devore to take the impressions of Von Lohen's upper and lower jaws nor how long it took Winton to go from his home to his office. At any rate, the impressions were evidently made in what Winton would estimate as "a few minutes" because when he reached his office they were finished and Von Lohen was leaving. He says that he was very much incensed at Devore's having done the work. He did not speak to Devore about it that evening but the next morning reprimanded him severely. Concerning the Miller plate, Winton testified that Miller called at his office three times and that he fitted the plates under the belief that they were a reproduction of the old plates and not believing that Devore had taken an impression from which the plates were made. There is quite a good deal of other evidence that we do not regard as necessary to recount.

The surrounding circumstances we regard as quite damaging to Dr. Winton's defense. Devore had been sentenced and convicted of violating the law by practicing dentistry illegally. He had served a term in the Cabell County jail. He had been indicted again, tried and acquitted. It is fairly well established that following his acquittal he was illegally practicing dentistry in what were his and Winton's joint offices. He, Winton, had had his attention directed to the questionableness of Devore's methods while the second indictment against Devore was pending and had then severed the connection. After that the association was renewed. Dr. Winton denies actual knowledge of many of these circumstances, particularly of the conviction of Devore until after his second indictment. These are matters that casual inquiry would have disclosed to him and his failure to so inquire is at least lamentable. With the factual background considered, we believe that it is necessary to find that the State

Board of Dental Examiners attached importance to the testimony of the witnesses Miller and Von Lohen rather than to that of Dr. Winton and in so doing did not exceed its powers nor commit a mistake of law. It follows that the Circuit Court of Cabell County was in error in reversing its finding revoking the license of Dr. John L. Winton, that the order of that Court must be reversed and the order of the State Board of Dental Examiners reinstated. It is so ordered.

*Reversed.*